Interstate Building and Loan Association v. E. L. Tabor et ux.

Decided April 1, 1899.

1. **Pleading—Notice.**

An answer sufficiently avers notice in alleging that by reason of recitals in a note purchased by plaintiff it had notice of a lien for the sum for which the note was given.

2. **Homestead—Incumbrance on—Wife's Assent—Securities.**

The burden of an incumbrance on a homestead may not be increased, without the wife's consent, by the husband's transfer of the lien in such manner as to release certain security which, if applied as it should have been, would have discharged the lien debt.

3. **Same—Fraud Upon the Wife.**

Inducing a wife to sign a deed of trust on a homestead by representing to her that it does not change the condition of the property as respects a pre-existing loan upon it, is a legal fraud upon her when in fact other security for the prior loan was thereby released without her knowledge.

APPEAL from Tarrant. Tried below before Hon. W. D. Harris.

*W. R. Edrington* and *Robt. G. Johnson,* for appellant.

*Martin & Smith* and *Harris & Harris,* for appellees.

CONNER, Chief Justice.—Appellant, a non-resident corporation, sued appellees in the District Court of Tarrant County on a bond for $1000 executed by appellees, and to foreclose a deed of trust, also executed by appellees, securing said bond by a lien on lots 13 and 14, block 2, Elizabeth Gouhenant's addition to the city of Fort Worth, Texas, and on ten shares of the capital stock of plaintiff's corporation, owned by appellees. It was averred that said debt was due and unpaid, and also that the sum of $1000, owing by defendants, was, at their request, used by plaintiff in the purchase of a vendor's lien loan obligation of $1000, given for a part of the purchase money of the above described lots, and was dated December 13, 1887, and executed by P. D. Wyatt, payable to the Fort Worth Building Association, and that the same had been assumed by defendants in their purchase of said property from Isla W. Reily and husband, and that plaintiff is the owner and holder of the same; and that it was agreed by and between plaintiff and defendants that if said bond and deed of trust should, in any action or proceeding, be held void or unenforceable, in whole or in part, plaintiff should hold the said vendor's lien until the advance made by it should be fully paid. Plaintiff prayed for judgment for its debt and a foreclosure of its lien.

Defendants entered a general denial, and specially pleaded that said property is their homestead, and was such when the bond and deed of trust were executed by them; that said instruments are void, so far as they purport to fix a lien on said homestead; that the vendor's lien obligation, purchased by plaintiff, was purchased after maturity, with knowledge that the same had been fully paid prior to the purchase; that the

Fort Worth Building Association, to whom said loan obligation was payable, held ten shares of its capital stock as collateral security for said obligation, and that dividends amounting to $850 had been declared on said stock, and said association had sufficient earnings to declare another dividend of $1000, and that such facts, under the by-laws of said association, canceled said debt; that said stock was of the value of $1850, and plaintiff, by its contract of purchase, released to said Fort Worth Building Association all claim to or lien on said stock, and thereby impaired the security for said debt, and created an additional burden on the homestead of defendants, and attempted to create a lien on said homestead, contrary to the Constitution, and thereby released any lien they might have had on said homestead. Defendant Kate Tabor separately pleaded that to induce her to enter into the contract sued on, plaintiff, through its agent, A. A. Henderson, represented to her that there was $1000 due and owing the Fort Worth Building Association, which was a valid vendor's lien on her homestead, and that the loan to be procured from plaintiff was to take up and extend the time of payment of said $1000, and that plaintiff was to take the place of said Fort Worth Building Association, and make no change in the securities held by said association; that defendant Kate Tabor relied on said representations and believed the same, and on account of the falsity of said representations she has lost the security of said ten shares of stock, for which she received no benefit, and that such loss was occasioned by the violation of plaintiff's said agreement, and that plaintiff is, in consequence estopped from setting up any claim against her.

There was a jury trial resulting in a judgment for appellant for $1298.55 against appellee E. L. Tabor, with foreclosure of lien on ten shares of stock in appellant association, and for appellee Kate Tabor on the issues raised by her as to the lien on the homestead claimed by appellant.

In the third and fourth assignments of error complaint is made at the action of the court in overruling appellant's exceptions to defendant's answer, in that it is not alleged therein that appellant had notice of the existence of the alleged lien upon the ten shares of stock in the Fort Worth Building Association, the surrender of which is urged as a defense by appellees. We have examined said answer, and do not think it subject to the objection thus made. Among other things, it was alleged that "plaintiff had purchased the Wyatt note, if at all, after maturity, with full knowledge that it had been paid off and satisfied; * * * that there was paid on said note at the time of plaintiff's alleged purchase the sum of $1414.50, and said note was more than paid off, and plaintiff had knowledge of said fact at said time, and had sufficient notice by the recitals in said Wyatt note to put it upon inquiry as to all the particulars of said transactions, as said note recites that said shares of stock (viz., the ten shares in the Fort Worth Building Association) were hypothecated to secure said note, and that the same was to be

satisfied according to the terms and conditions as set out in the by-laws," etc. It was also alleged that the Wyatt note was secured by a lien on ten shares in the Fort Worth Building Association of the value of $1850, and that "if the said shares had not matured, so as to cancel and satisfy said note, said stock had by its terms and under the rules and by-laws of the association matured, so that the same could be cashed for more than sufficient to pay off said debt, and that plaintiff by its contract of purchase of said note released to said Fort Worth Building Association all claims or lien on said stock," etc. Other allegations of the answer may also be looked to, but we think, in the absence of an objection other than the general one that "it is not alleged that plaintiff had notice of said lien," the allegations quoted are sufficient. It is expressly alleged, in effect, that by the recitals of the note plaintiff had notice of the lien. We therefore overrule the third and fourth assignments of error.

There are twelve other assignments of error, with thirteen propositions in all thereunder. We have carefully examined each and the record relating thereto. We will not attempt to treat them separately. So far as properly presented for our consideration, they in various forms present the contentions: 1. That appellant had no notice of the lien on the stock in the Fort Worth Building Association. 2. But if there was such lien, and appellant had notice, that the husband had the right to abrogate it and to appropriate the stock to community purposes. 3. That there was no evidence showing that the Wyatt note had been paid off or discharged at the time of appellant's purchase.

The jury in their verdict, after finding for appellant against E. L. Tabor for $1298.55, with foreclosure of lien on ten shares of stock in the appellant association, say: "And we further find for the defendant Kate Tabor; that is, we find that plaintiff is not entitled to a foreclosure of lien on the lot of land described in the petition." This finding was approved by the court below, and it is our duty to sustain such verdict and judgment, unless it appears that some error to appellant's prejudice was committed upon the trial so resulting.

In our opinion, the judgment below is maintainable on either one of two propositions. That is, if in fact, as alleged, the Wyatt note was in effect paid off and discharged at the time appellant purchased it, and appellant had notice thereof, then it is clear that appellant would have no legal right to foreclose a lien that was but an incident thereto. Or second, if said note was not paid, and appellant fraudulently, as in effect alleged, so destroyed securities given for its payment as to increase the burden upon the homestead of Kate Tabor against her right and consent, then to the extent of the value of security so destroyed appellant would be estopped from insisting on the lien upon the homestead.

The following are, in substance, the facts pertinent to these questions:

In 1887 one Wyatt executed a note for $1000 under circumstances constituting a lien therefor on the lots described in plaintiff's petition and claimed by appellee Kate Tabor as her homestead. To secure its payment there was also a valid lien on ten shares of stock in the Fort Worth

Building Association, of the par value of $100 each.   This obligation being owned and held by said Fort Worth association, said lots and . stock were· afterwards purchased by various parties, among others appellee E. L. Tabor, such purchasers assuming the Wyatt note.   Appellee E. L. Tabor's purchase and assumption was made in 1889, and both of the appellees immediately went into possession and established their homestead thereon, and said lots have been their homestead ever since.

The stock obligation in the Fort Worth Building Association had the usual provisions for the payment of interest, dues, stock payments, etc., and provided for the liquidation of the Wyatt or loan obligation in accordance with its by-laws.   Among others it had the following by-law: "When the shares of stock upon which any loan has been made shall reach the matured value of $100 each, the amount of the value of stock shall be credited to the account of the borrower owning the same, when the loan shall be declared fully satisfied and paid, and the stock shall be canceled and revert to this corporation."

Wyatt and his vendees, including E. L. Tabor, made the required interest and stock payment to the Fort Worth Building Association until some time before the execution of the bond and trust deed executed to the appellant association on May 21, 1895, when E. L. Tabor ceased to make any such payments.   Such "stock payments" then aggregated $710. Some time before this latter date it appears that the Fort Worth Building Association ceased to do business, and was then solvent and in process of liquidation.   It also appears that at this time, to wit, May 21, 1895, the Wyatt stock on the books of the company had been credited with stock payments and dividends declared to the extent of 85 per cent of its face value.   Such dividend had in fact been declared as to all stock of the association, such 85 per cent having been paid to nonborrowing stockholders.   At this time all debts of the Fort Worth Building Association had been paid, and its only liabilities were to its stockholders, such liability then amounting to $7000 or $8000.   Its assets, mostly, if not altogether, real estate, then amounted to $23,000, and were sufficient to have more than paid all stockholders the remaining 15 per cent.

In this condition appellant on May 21, 1895, made the loan of $1000 to appellee E. L. Tabor, it being arranged, in substance, by and between E. L. Tabor and appellant's agent, one Henderson, that said $1000 should be paid by appellant to the Fort Worth Building Association, and thereby take up the Wyattt note; that the Fort Worth association should transfer |said note to appellant, and appellant release the lien therefor on the ten shares of Fort Worth Building Association stock, thereby leaving it subject to the control and disposition of E. L. Tabor; that appellees should give bond and trust deed on the lots in question, as security for such advance, and that appellant should also retain the Wyatt note, with its vendor's lien, and also have lien on ten shares of stock of $100 each in its own association, to be taken by E. L. Tabor.                    ,

This arrangement was perfected, and the bond and trust deed sued upon in this case was the result.   The bond, among other things, recited

that E. L. and Kate Tabor had received an advance of $1000, which had been used by the association in the purchase of a certain vendor's lien outstanding and unpaid against the real estate described in plaintiff's petition, describing the lien herein described as the Wyatt vendor's lien. The trust deed also recited that the advance and deed of trust was made pursuant to the request of the said E. L. and Kate Tabor, and at their request used by the Interstate Building and Loan Association for said vendor's lien, and that said association at the request of the said E. L. and Kate Tabor has changed the form and manner and extended the time of payment of the original indebtedness represented by said vendor's lien, in the way indicated in this deed of trust and the bond which it is given to secure. Said deed of trust further provided that it and the bond should be given and held as an extension of the original vendor's lien purchased at the request of E. L. Tabor and Kate Tabor by appellant, "and that in every action or proceeding on said bond or deed of trust, the holder thereof shall be entitled and subrogated to all the rights, equities, and securities of the original owner and holder of said vendor's lien and evidences thereof so purchased and extended by the plaintiff." This bond and trust deed were duly signed and acknowledged by the appellees.

The transfer of the Wyatt obligation to appellants recited that the Fort Worth Building Association "assigns to plaintiff (appellant) said deed of trust (referring to the Wyatt deed of trust), except so far as said deed of trust applies to the said ten shares of stock of the Fort Worth Building Association, and the said ten shares of stock are hereby fully released unto the owner thereof free from the operation of said deed of trust."

Kate Tabor, in substance, alleged and testified that she had no knowledge that the lien upon the ten shares in the Fort Worth association had been released; that she did not know the condition of the Wyatt obligation; that Henderson, appellant's agent, did not read the papers to her; that he represented to her that the transaction was to be, in effect, but an extension of the debt of $1000 that he represented was then due upon their homestead; that Henderson represented to her that the transaction amounted, in substance, but to a transfer of the former vendor's lien to his company, and that the debt as to his company would in all respects remain as it existed in the Fort Worth company, except that the time of payment was to be extended.

E. L. Tabor testified that he talked with Henderson several times about the matter; that he refused to procure the loan in question unless the stock in the Fort Worth association was released, but finally, after the agreement had been perfected, and while on the way to his house for the purpose of having Mrs. Kate Tabor sign the bond and trust deed, he said to Henderson, "You don't want to talk too much about this transaction; told him he didn't want to make too much remarks to his wife about the transaction that was going on; didn't tell him in particular why I didn't want him to; I just simply told him I didn't want him to

make any remarks, say anything to my wife about what was going on about the papers." He further testified that when they got there he don't know that he told his wife anything; that Henderson before him didn't tell her anything. He further testified on cross-examination that "he didn't know that he could explain his purpose more explicitly than he had for directing Henderson not to tell his wife." "If he said too much to her, probably she wouldn't sign the paper. My purpose was I wanted the papers fixed up."

It was further shown that after the bond and trust deed sued upon by appellant had been executed the Fort Worth association paid to E. L. Tabor $670 in dividends on said stock therein, deducting some for fines, etc.; that he afterwards sold the stock for $120; that he paid this money out "in debts and one thing and another." No necessity therefor, however, appearing in evidence.

E. L. Tabor further testified: "At the time I got this loan from the plaintiff in this case, I didn't think or claim that I owed the Fort Worth Building Association anything;" that before the papers were executed he had talked a little to his wife about signing them; "I told her that I wanted to transfer it into another company; that this company was claiming that I owed them a thousand dollars on this property, and I wanted to transfer it to another company."

Mrs. Tabor also testified that when Henderson came with the papers for her signature, he didn't read the papers to her, and said: "I can explain it just as well, and it will stand just as it stands now, but it was just only simply transferring the place;" and that she refused to sign any papers to the place until he said it was "just simply transferring the place, and that it will stand just like it stands now, transferring it into the Interstate Building and Loan Association from the Fort Worth Building Association;" that Henderson came twice; that the first time she refused to sign the papers, and he said to her: "Mrs. Tabor, it is just simply transferring the place, and it will stand just like it stands now." She further testified that "she didn't read the papers, but simply signed her name, and that she understood the transaction as explained to her by Henderson;" that she didn't then understand that there was anything due on the place; she thought that, "if anything, her husband had overpaid the place;" that she thought "the place was clear, but that it had to stay in the building and loan association for a limited number of years, and that it was just only transferring it;" thought that was perhaps a rule of the company. She further testified that she got no part of the money received by her husband on the Fort Worth stock, and in fact did not know that he received any money; that she did not agree to the release of the Fort Worth stock.

It was admitted that at the time of the execution of the bond and trust deed sued on E. L. and Kate Tabor were husband and wife, and that at the date thereof the lots in controversy were their homestead.

We think the evidence sufficient to support the contention of appellees that appellant's agent had notice, as defined by the court in his charge,

of the existence of the lien on the stock in the Fort Worth association to secure the Wyatt note. We are also of opinion that such notice extended to knowledge of the condition of said stock and Wyatt note, as hereinbefore presented. We are also of opinion that in equity at least, under the facts, the Wyatt obligation, as against Mrs. Kate Tabor and as against the lien on her homestead, was paid off and discharged, and that therefore, as against her, no cause of action on the Wyatt note existed in appellant's favor or was acquired by appellant in its said transfer.

But if mistaken in this, the writer thinks the evidence is such as to support the finding of the court and jury below, in effect, that as to Mrs. Kate Tabor a legal fraud was perpetrated. Without effort to now elaborate or justify the proposition by the citation of authorities, in my judgment, under the circumstances of this case, Mrs. Kate Tabor was vitally interested in the homestead. She had by the universal and long continued trend of legislation and judicial decision in this State an affirmative, substantive right of property therein. She had the right to insist upon the application of all securities for the payment of the Wyatt note, before resort should be had to the homestead. Without her knowledge and against her consent neither appellant nor her husband could release such securities, and thereby increase the burden upon the homestead.

Our law provides that before the homestead can be transferred the express consent of the wife must be obtained. She has the right to refuse to execute any paper that takes her homestead away from her, and I am unable to perceive why she should not be accorded the right of refusing to impose a burden upon the homestead that might result in an indirect conveyance thereof, and in an absolute destruction of her homestead privileges. It was admitted that at the time of the execution of the trust deed and bond upon which appellant sued the lots in question were the homestead, and that the lien thereby created was invalid. It therefore follows from what has been said that the verdict and judgment of the court below must be upheld.

It is accordingly ordered that the judgment below be in all things affirmed, on the ground that the evidence, as we interpret it, shows beyond question that the Wyatt obligation was in effect paid off or discharged at the time of its acquisition by appellant.

*Affirmed.*

Writ of error refused.